May it please the court, Mr. Rupp. My name is Larry Michael and I represent the appellant plaintiff in this case, Jill Audy. Jill brought a claim against Conklin Cars alleging two theories of recovery. The first was that she was terminated in violation of Title VII because she was treated in a disparate manner from male co-workers. She also brought a state law claim under Kansas law alleging that her termination was in violation of Kansas public policy. What I'd like to do is start out just talking about the pretext issue because Judge Teeter below on the Title VII claim, it was undisputed that we did state a prima facie case and there was sufficient evidence of a legitimate non-discriminatory reason for termination. The whole case at this point depends on the pretext issue and whether there is evidence that her termination was pretext for discrimination. We believe that there is a lot of evidence in this case showing disparate treatment and that her termination was pretext for discrimination. The first thing I'd like to address is the primary employee who she is compared to is Javier Lopez who was the used truck manager. And that was her buddy for a long time. That's correct. And all of a sudden she's saying that he was against women. Yes. How did that suddenly happen? Well first... Because she said it? I'm sorry. And you're saying that because of this supposed second meeting when she was out of the room? No, we believe the evidence that he had an issue with women is based on other evidence, Your Honor. What is the other evidence? They were partners in a number of ways. They were, Your Honor, until she started... He hired her, didn't he? Or recommend her? He was comfortable with hiring her, but it was Gerard Smith who actually hired her. But Mr. Smith has a track record. He's twice been accused of sexual harassment and the company has paid out money, not once but twice. Well what does that have to do with this case? Because that demonstrates that she was treated differently than he was. The person you need to look at is... He used the same language she did in front of everybody all the time? Well first off, she disputes using that language all the time. That was disputed by her. Secondly, even if she did on occasion use foul language, the evidence was that Mr. Lopez used just as much foul language and that's consistent with the fact that he got the company sued twice. So to say that Jill was the only one in the company using bad language is a misstatement of the record. The record is that pretty much everybody in that workplace cussed. The other thing that's very... While we're talking about the record, I'm somewhat concerned about your bringing up these other two lawsuits. What's in the record about those lawsuits? Number one, I assume the jury verdict isn't admissible or any settlement isn't admissible, so it'd have to be the evidence of what happened in those cases. Is there anything in this record about what happened in those cases? There was confidentiality agreements in those settlements, Your Honor. So they're not part of the record? Not exactly what he's accused of, but I don't think that's... I think you should try to limit your argument here on facts to what's in the record. We can't... We're not going to decide this case based on evidence that wasn't presented to the district court. You're not asking us to do that, are you? Well, we're asking you to consider and the district court to consider that they had to settle cases based on his behavior. Now, but even if you don't consider the fact, Your Honor, that they settled cases, it's also uncontributed that he was written up and had to watch videos for sexual harassment. So even if you don't consider the fact that there were other claims brought against the harassment... He wasn't sexually harassing her, was he? No. There's no evidence of that. No, and we're not accusing... We're not alleging a hostile work environment, Your Honor. She's not. What she's alleging is that she was terminated for a reason that when you compare how other male co-workers were treated, she was not treated to the same standard that the male co-workers were held to. The male co-workers would get physical with subordinates. We've got evidence that new car managers slapped a sales representative's hand, chest bumped a sales representative, and came to Jill with that complaint about that treatment. There's evidence in the record about how... Well, let me back up because I want to go through each of the elements, what I think shows the fact that there was a pretext. First off, Jill had only worked there six months when she was terminated, and by the fifth month, the general manager admitted that she was outperforming Mr. Lopez in every single statistical category. Okay. As I indicated before, Mr. Lopez was written... Is there any evidence in the record that other employees used the same language, called the deal a shit show and a cluster you-know-what, used bad language, and attempted to fire people when she didn't have any authority? Is there anything in the record that other people did the same thing? Not that they did chest bumps or fist bumps or anything else, but that they acted the way she acted? Well, first off, Your Honor, she disputes that she acted... Everybody else says she did, so I mean... But isn't that a question of fact? A jury could believe her over the people that are still working there. And that's our position, is that this is a fact issue that should be determined by a jury, not a legal issue. If a jury can believe one person over three others, as the court knows, and Jill is strongly denied that she acted in this manner, and if she really did act this bad, Your Honor... Judge Kelly's quoting from an email that she wrote. Is she contesting that she wrote the email? Sure. She's not disputing that she wrote that email. But in that email, she's also raising issues... No, no. The language in the email is one of the primary reasons that we're here, and you're not disputing that she used the language in that email? No, no. What are you saying, then? We're saying is that the men were doing the same thing and nothing happened to them. What's in the record that says that? The fact that Mr. Lopez got twice, was disciplined for sexual harassment twice. She testified that... Let me just get the question out. Sure. I think maybe we should frame this in terms of your argument about Mr. Lopez being similarly situated. How was he similarly situated to your client in terms of the basis on which the employer states that she was terminated? How are they similarly situated? Because the evidence is that Jill was fired for basically, usually either using inappropriate language or being disruptive. Now, the first thing I want to point out is she denies that. Secondly, she testifies that Mr. Lopez used just as bad language and was derogatory about women. That's the second thing. The third thing is Jill was never, ever written up. There's not one disciplinary record in the file, whereas Mr. Lopez was written up for sexual harassment and forced to take videos. And so, basically, Mr. Lopez and Jill performed very similar behaviors. Mr. Lopez gets written up and watches some video and Jill gets fired. And then the cherry on top is Mr. Lopez gets Jill's job. That, in our view, is evidence of disparate treatment. It's disingenuous for Conklin Cars to argue that Jill was the only one in that workplace that ever used foul language. It's disputed factually and common sense tells you that that's not what happened. And if she was behaving so badly, why didn't they write her up? They're not saying they wrote her up or fired her for being disruptive. The evidence, actually, was that after she sent that email in which she made concerns about the Kansas Wage Payment Act, or she didn't reference that, but she made concerns about whether some of her subordinates were being properly paid, her supervisor then fires her the first day he gets back from vacation. And if you read the record, he doesn't really say he fired her. Counsel, did she have the same supervisor decision-maker as the others you're talking about? Yes, they were both supervised directly by Gerard Smith. And if you read the record, Mr. Gerard— Well, at the time that Mr. Lopez was disciplined, was it Mr. Smith? Yes. Yes. Now, the other thing I want to point out, Your Honor, is that in Mr. Smith's deposition, and he acknowledges he's the one that made the decision to fire her, he, in his deposition, indicates it had more to do with that she put something on Facebook about looking, does anyone hiring? If you read the deposition transcript, he really doesn't put much weight on the fact that she had used the word shitshow. He used the fact that she had put on Facebook, is anyone hiring? And he didn't— Say that was the reason she was fired. I'm sorry? Say that was the reason she was fired, was that she sent out the email saying, is anyone hiring? What cause of action do you have for that? Because if that's disproportionate to how the male employees were treated when they did similar conduct, the whole issue here, Your Honor, is that there was one standard for the male employees that were managers at Conklin Cars. They could basically commit a battery on a co-worker. They could get disciplined for sexual harassment. They could curse and make disparaging comments about women. And the only discipline that's in the record is Mr. Lopez got written up and had to watch some videos. But Jill, she has the one uncontroverted incident where she said that there had been a shitshow and she was upset that her employees were not getting paid properly. And she gets fired without even getting a warning. She doesn't get the option of watching some videos. That is classical disparate treatment. In our belief, Your Honor, it's an example of holding one standard for women in the workplace and a separate standard for men. Conklin Cars was the epitome, if you look at the record, of the good old boys club. If you look at the statistical information of how few female employees they had, and of that small number were glorified waitresses that brought coffee to customers while they were waiting in the waiting room. There was a very small number of women in this workplace. My argument, my point is that there is enough here that Jill ought to have a right to present it to a jury and let a jury decide whether they believe her about who was cussing and who was cussing the most. Instead of it being decided on affidavits or depositions on summary judgment. And that's really the issue here. Could a jury decide that she was fired properly? That certainly could be an outcome. But we also believe there's enough evidence here in the whole record that a jury could look at this and say, yeah, she was held to a little different standard. I think, again, the cherry on top, your honor, is she outperforms Mr. Lopez, gets fired, and then he gets put in her position. All of this chronology of events clearly indicates a pattern of disparate treatment and a good old boys club, what we know that exists in the workplace, unfortunately. And based on that, we would respectfully request that you reverse the decision and let a jury decide who's telling the truth in this case and who's not, not base it on a cold record. Thank you. May it please the court. Alan Rupp, the appellee. This is a pretext case. No direct evidence of discrimination. Shift to the McDonnell-Douglas burden shifting. They have met their prima facie case. Next, go to the legitimate non-discriminatory reason. And let me stop there for a minute, because I think this case illustrates the difficulty plaintiffs have when the legitimate non-discriminatory reasons are true. And in this case, the legitimate non-discriminatory reasons are clearly true. What do we do about the fact she denies that she used bad language? Well, the question isn't whether she denies it. The question is whether a reasonable jury could conclude that. I say that a reasonable jury could not. Well, isn't the test whether a reasonable employer could believe it? Well, that's... Because even if the employer was wrong about that, if the employer believed it, it would change reports from subordinates about conduct. I... If you... Okay. I'm sorry. I agree with what you say. It's not jumped ahead a step or two. It is whether a reasonable employer would believe that. And this court has given discretion to employers in that context. And they... It has to be admissible summary judgment evidence to form the basis of the decision. And in this case, number one, a reasonable employer could conclude that based on the several instances of her misconduct, abusive language, profane language, and the kinds of things she said to disrupt the workplace. That still leads you then with the argument that, okay, she misbehaved or the employer could have thought she misbehaved, but she was treated worse than males in similar circumstances. Isn't that the issue here? That is one of the issues here, but it comes as an issue in the question of rebutting the pretext. And what the plaintiff has to show in that situation is that it is unworthy of belief. And in terms of what they have generally, what the court generally looks at, it's the... They deviate from the policy. Is the reason advanced that's legitimate, non-discriminatory, untrue? Or is there some sort of practice that was... not violated, but a practice that the employer stepped out of in order to make the decision? And in this case, none of that exists. What you include is one of the possibilities that in similar circumstances, similarly situated males had not been discharged. I think that's really the argument being made by plaintiff here. Yeah, when you look at the comparables in the context of pretext, it doesn't have to be a DNA match, but it has to be close. There has to be some similarity between the parties. And Lopez was a, to quote the court earlier, a buddy of the plaintiff. He recommended her for the job that she got in Salina. But the question isn't what she thought of Lopez. It was whether Lopez's misconduct got him in the same trouble that her misconduct. It didn't because they're not comparable. And that's what you need to discuss. The two sexual harassment cases, which Mr. Michael handled, are cases in which he was reprimanded and they both came at the same time. He was reprimanded. He was put on a plan of action. And the testimony in the record is that he improved his conduct. One was a consensual sexual situation, wasn't it? And the other was sending pictures to each other. I think he received pictures from somebody and those were on his phone. That's what's in this record. The rest of that, there's nothing else in the record as far as those other two sexual harassment cases other than he was reprimanded, he was written up, he was put on a plan of action, and he improved his performance. On the other hand, the plaintiff was there for six months and she engaged in the conduct that we've already kind of talked about where she fired an employee that she didn't have authority to fire she kept telling employees in the finance department with the finance director sitting there that the finance department was slow as F and used the word. She was complained to by one of her subordinates and she called him a crybaby and then she was reprimanded for swearing but continued anyway. Well, she was reprimanded but unlike Mr. Lopez, she was never written up and put on a plan. In other words, the employer put Mr. Lopez in a position to sort of rehabilitate himself and get back on track but that path was never provided to Ms. H. So why wouldn't that be evidence of pretext? The issue of whether a non-comparable was written up to a comparable to the plaintiff, I would suggest that the issue of the write-up when it's not a violation of the company's policy on disciplining is not a distinction that's going to cause a jury trial. The fact that he was written up is not comparable to what her continued conduct was. Well, when we talk about comparable, could his conduct be viewed as more egregious than her conduct and yet she's terminated and he's not? Rather than comparable being some kind of equivalency, it's more a matter of comparing the two and saying, look, there were charges that he engaged in sexual harassment, she swears. Doesn't one seem more egregious than the other and yet she gets the more severe discipline? Well, I disagree, Your Honor, respectfully, that they are comparable given the different circumstances. I thought you would, but I need some help on how similarly situated and comparability works in this context. Let me help you with what my thought is and that is that the comparability is determined by the record and you can't look at the fact it was alleged that he committed an act of sexual harassment on two occasions and from that come to the conclusion that there was some sort of horrible conduct on his part or egregious conduct or pervasive action. It's not in the record. The only thing in the record, as we've identified, is the fact that he was charged with sexual harassment and the case was settled with confidentiality provisions. If that creates a comparable situation in this case, it's going to create a comparable situation in a lot of cases. I thought the distinction you were making, I didn't think that was your argument before. I thought you were arguing, yes, he committed misconduct, but he reformed after he was chastised about it and these two incidents were similar times. After he was disciplined for it, he didn't do it again. Whereas she, maybe she wasn't written up, but she was told this is unacceptable behavior and it continued. Your Honor, it probably won't come as any surprise to you that I'm actually arguing both. I'm arguing first that they're not comparable based on the record and if they are, the incomparability is shown by the fact that he reformed. So then the question becomes, what sort of discipline did she receive comparable to his being written up? What is the evidence about her being told that this is unacceptable behavior? Well, I can't get to that question because they are not comparable. Okay, well, you just said you're arguing both. So if it was comparable... In terms of the distinction between the both, they have to show as part of that, that it's unworthy of belief and they could show that. So you're not arguing that the discipline she received was comparable to what he received? No. I thought that was your argument. Well, I am saying that they are not comparable, but if you look at the discipline that each received, she was reprimanded three or four times or... That's what I was asking. What was the evidence of her being told her conduct was unacceptable? Gerald Smith, she came from the Hutchison facility and there she was reprimanded more formally and she was recommended for the position by Lopez and Celina. She left Hutchison for health reasons and then was applied in Celina. Lopez recommended her, Gerald Smith agreed, and they hired her. She worked for six months and her conduct that we've discussed all happened in a six month period. That's not my question. My question was, how was she told her conduct was bad? Gerald Smith told her. When? What were the circumstances? In his testimony on two or three different occasions, he told her her conduct was bad and she obviously knew her conduct was bad and she was in job trouble because she posed in an email the question, who is hiring? It's tough to work with lazy people. After she posted that, did she engage in sort of vulgar language anymore? There wasn't time. Gerald Smith returned from vacation and terminated her at that point. She was incorrigible. It was the straw that broke the camel's back when he saw that email with her because he had been working with her trying to get her to curb her conduct and she wouldn't do it. She was not comparable to Mr. Lopez and even if she was, in terms of what action was taken, it wasn't a violation of the company policy. The employer in their policy had the ability to orally reprimand or to write up so it falls within the same realm and doesn't prove that it was unworthy of belief. So when you use the word comparable, is it the same thing as conduct? Are you talking about conduct that is comparable? I think it's more than conduct. I think it's the circumstances of their position and looking at more than just the conduct. But in terms of their conduct, as we discussed with regard to what's in the record, we can conclude they are not comparable based on the conduct that is described in the record. The one thing that I want to mention as my time ends is I hope we don't forget the same actor inference because I think in this six-month employee or employment of the plaintiff, we have to look at the same actor inference. This court has given credence to that in a number of similar circumstances. Gerald Smith took Mr. Lopez's suggestion and hired her and Gerald Smith terminated her six months later. And I think that inference, the plaintiff is going to have a hard time in overcoming and has obviously in the record had difficulty in overcoming that inference, which I think is somewhere between an inference and a presumption. And I would suggest to you that that is reason alone to not disturb the lower court's grant of summary judgment. I think I've covered everything I wanted to cover. Thank you for your time. You had a few seconds left, I think. How much time does he have left? 26 seconds. All right, two points real quick. First off, there's evidence in the record, Jill testified that Mr. Lopez had a reputation for vulgar comments about women and cussing. And when you talk about the reasonable employer issue, Judge Hartz, Gerard Smith was the actor employer making the decisions in these decisions. The final thing I'd like to say is Mr. Lopez summed it up in his testimony. He said, Jill's personality is a lot like his. And if that doesn't show comparable behavior in a similar situation, it's an admission by Mr. Lopez that Jill's personality was a lot like his. They were very driven and outgoing. So based on that, we would respectfully request that the court reverse the district court. Thank you. Thank you, counsel.